Case number 19-1326, Beatrice Kelly et al. v. Metropolitan Group Insurance. Argument not to exceed 15 minutes per side. Mr. Milanowski, you may proceed for the appellants. Good morning, your honors. Joe Milanowski on behalf of the All right. And real quickly, too, I'm not, there's a procedural, I think, issue here. There was a motion filed to expand the record. I'm not sure if that was ever, I never saw anything that dealt with that. I'm not sure how. It's under advisement. If you want to allude to it, do an argument, you may, but we have not formally ruled on that as of yet. Okay, I didn't know how the court wanted to address our two main points regarding this court's de novo review of this case. First, what does rented occasionally mean? And that's the issue that the district court below did decide. I think that it should be considered that definition or what that phrase means should be considered in a situational versus a temporal sense. And the second main point is what does used as a private residence by you mean? And I argue here that that is different than language such as where you reside. And that's an issue that the district court did not decide in this matter. Now, as to that issue that the judge did decide below, he granted summary disposition or summary judgment because the dwelling he believed was being used for business purposes, which turned on the issue of whether or not plaintiff had rented it out only occasionally for use as a residence. And the meaning of occasionally was critical in the district court's decision. It was not defined in the policy, so the judge looked at a dictionary definition. And what the judge quoted and relied on in his decision was a definition that defined occasionally as now and then or not often or regularly. So what the judge focused on is the length of the time that plaintiff had rented out the house to one person, the plaintiff's good friend, essentially as a house sitter while she was out of the house. What we argue below and we argue here is that a better and more relevant definition of occasionally is favorable opportunity or circumstance or state of affairs that provide a good reason. That was argued below to the district court. It's argued in our briefs. What I believe the district court's error here was considering occasionally in a temporal sense rather than a situational sense. And the re are very few cases on this subject, none really in Michigan, which the Michigan law as an initial point kind of controls here, but there isn't really any Michigan law. The few cases, and we discussed these below. You say there are no cases, no cases defining the term occasional or occasionally? Is that what you're saying? Or no cases that use occasionally in the way that you want us to use it? Well, I think in Michigan there's no cases that discuss occasional at all. Okay. But there are cases that say that in determining what the parties to the contract agreed to, you use the normal and natural meaning of the words that are not otherwise defined in policy. Is that correct? That's correct. And usually what it goes on to say is that looking at a dictionary is a good way to get to what the normal, usual sort of definition would be. And as we, I think there's an exhibit in my brief below and here that specifically points out a definition of occasional that has a list of different things. I think there's four or five different sub-definitions. And so I think it's important when there are these different situations to pick the one that most, I guess is most relevant to the matter at hand. And that's why I believe that in a situation like we're discussing here, a definition that says occasionally is a favorable opportunity or circumstance or a state of affairs that provides a ground or reason for doing something is more relevant in terms of being situational. Let me be frank with you. It took me a little while to get my head around that definition in this setting. It occurs to me that you might line up a hundred people and ask them whether the occasionally has a temporal or a situational meaning and that almost all of those people would go for temporal first. And then after you explain what you think it means in an insurance contract, they might be able to get their heads around it too. I did. I mean, I can do it. I just wonder if the more usual meaning is the one that we have to apply in this situation. The way I kind of look at it, addressing your question, Your Honor, is that the cases that I cite provide some insight as to, at least on a court level, what occasional means. And we talk about the Lecompte case where someone was selling a home and had rented it out for two years to two different people. And the person was still selling the home. It was contacted by someone else and said, hey, I hear that you may be open to renting it. Can I rent it? And then there was another ten-month series. I think compared to our case, our cases are  one person who was renting it for an unbroken amount of time. About two and a half years, right? About two and a half years, correct. Pursuant to a written lease and they're paying $700 a month. Correct. It started out as a one-year lease and then under Michigan law, once a lease for a term expires, it automatically goes to a month-to-month. Now, that's the law. In fact, we have a situation here, we have good friends. If they had lived there for five years, would you argue that that's occasional too? What time frame are you looking at here? I guess that's where I get to the point of it shouldn't focus on a temporal aspect. It's the occasional. What do you mean by that? The argument is that, and this is what it gets to, the reason why this provision isn't there. The insurance company does not want to get in a situation where they're insuring a commercial rental property. For business purposes, that's what it all arises out of. This is not a situation where the good friend is staying in the house to help keep an eye on it. If they're paying $700 a year, I assume it's probably going for part of the mortgage or anyway. It's not $50 a month or something. You say it's a caretaker, but I think $700 is a substantial amount. I don't know what the house looks like. This is a two-bedroom home. $700 a month I think is clearly below the market value for East Point, Michigan, suburban Detroit. This is just to help defray her costs, not to necessarily make a commercial profit. My point is that the LaPointe case... You don't make a profit, it's not a business? Is that what you're saying? If you have a losing venture, then the business exclusion wouldn't apply? So you don't look at whether the profit or loss? I don't understand that either. I'm not necessarily saying that. It wasn't intended to be a profit making venture. She is primarily wanting someone to watch the house. She's getting some money to help defray her costs. This is not a house-sitting situation when they sign a one-year lease that would prevent your client from moving back in without breaking the contract. It would be breach of contract if she showed up at the door and said, now you're out. In fact, the testimony below is really the opposite. They had an understanding. The plaintiff, because of her business and her family, took her to the Detroit area frequently. When she would be in town, especially when she was alone, she would stay at the house. That was the understanding that they had. The written lease, I think, supersedes oral promises. I haven't read the lease, but there is a written lease for the premises, and this person under property law who's writing it does have a right to be there, irrespective of all these oral representations, I'm sure. I think if the practice is different between the two parties to the contract, I think that is going to be more relevant. Doesn't the record also show that they not only moved their residence down here to somewhere outside Cincinnati, and when the insurance coverage didn't materialize, the house fixed up and sold? That doesn't sound like somebody who was just having house-sitting and intended to move back in. After the fact, when she realized the insurance company was not going to, anytime soon, be paying to fix it up and have a house that she could potentially move back to, she decided just to fix it up quickly and get rid of the house. Otherwise it was going to be a drain on resources to have to upkeep it in a state where it wasn't habitable. So she decided to move on, but that's really after the fact. The critical point is what was going on during the time of the contract of the policy before the loss. So that's why I think that the situational aspect versus Tempro is important. My time has run out, so I want to real quickly get to the second issue here, which the judge did not decide was the residential premises issue. And here the insurance company is arguing that the summary judgment was appropriate because the insured dwelling was not used by plaintiff as her private residence. I believe that's framed incorrectly. The policy states there's coverage for the dwelling owned by you and used as a private residence by you. That's much different than the where you reside language which appears in the cases that they cite primarily, this Hennesser and McGrath cases, the Michigan cases, which are relevant. Those cases specifically when they were written said that the specific policy language is critical and important. This language in Hennesser and McGrath is different than in here. As we cited, the Durham case points out that that different language results in a different outcome in terms of the critical issue being are you using it as a private residence, not are you residing there. That definition is critical and it's important. I see my time is up and I don't want to take any extra time. Thank you. Good morning, your honors. Carrie Rhodes on behalf of Metropolitan Group. May it please the court. I do want to apologize. I woke up with a little bit of a tickle in my throat. To the extent that you can't hear me, please let me know. I'm happy to reiterate the arguments as found by the trial court below as was entitling my client to summary judgment. As we have discussed already here today, the policy and the facts, frankly, are both unambiguous and uncontested. In 2005, Beatrice Kelly purchased this two-bedroom home in East Point, Michigan. In September 2016, she entered into an insurance contract with my client, providing for homeowners insurance coverage. Ten weeks later, that home succumbed to fire and an insurance claim was presented. As a result, an investigation ensued. Much different circumstances were realized and admitted to by Ms. Kelly. She admitted that since April 2014, she moved herself, her two children, and her husband, as well as her food, clothing, and contents to Maynesville, Ohio. There she filed income tax returns since that time, identifying that her home was Maynesville, Ohio, that she had childcare expenses in Ohio, that she made charitable donations in Ohio, and perhaps most poignant to what we're here about today, she identified this property as a rental property. And in fact, as part of that investigation, Metropolitan confirmed that there was indeed a lease, as you point out, Judge Griffin, for the rental of that property for $700 a month. That investigation also confirmed that her tenant, Ms. Floyd, put the utilities in her home, that that tenant furnished the home, that that tenant's clothing was in the home, that that tenant's food and personal items were in the home. That tenant also had paid her $700 a month for 30 months before this fire. And in fact, Ms. Kelly testified at her examination in Narrowth, she could not tell Metropolitan the last time she had laid her head down at that home. But the $700 was exclusive of utilities? The tenant had to pay the utilities on top of the $700? Absolutely. And during the course of the litigation, that tenant, Ms. Floyd, confirmed that she had paid that $700 a month and confirmed that she had put the utilities and paid those utilities and were current in those utilities at the time of the fire. As a result of that, amongst other reasons, but most poignant here, the claim was denied as Ms. Kelly was using this home for business purposes and or she was not using the dwelling as a private residence by herself. Is there any evidence that it was rented below the market value? There was no evidence of that. And to the question you posed earlier during the discussion with Plaintiffs' Counsel, it isn't required to be profitable. And in fact, the business purpose language speaks to that. The court would refer to docket number 17-2 from below court, which is a copy of the policy. Business purposes has two definitions. We focused on the second one, which is the obvious one, which is the unambiguous one, property rented by you. There's no dispute here. She was renting the property. Everybody agrees. But look at provision number two, I'm sorry, provision number one, which says any full or part-time activity of any kind engaged in for economic gain. There is a distinguishment of the business purposes language. One can be for profit. One can be to gain money. The other one is simply renting the property. There was no denial based on that. There's no facts based on that. A two-bedroom home, I believe, is well compensated for by $700 a month in East Point, Michigan, in addition to the rents and utilities no longer being your obligation. But this isn't a denial for profit. This is a denial for rental activity, which everybody agrees to. In fact, the discovery in this case in the lower court confirms as much. We took Mrs. Floyd's deposition, and she admitted all of those facts. She even added that the only two people residing there for those two and a half years, those 30 months, was herself and her daughter, and she could not remember the last time Mrs. Kelly had laid her head in that home either. That discovery also confirmed the procurement of Mrs. Kelly's tax returns. And while I know it is the subject of my supplementary motion, I did that for purposes of developing the record. What we had during the course of discovery and before Judge Drain granted summary disposition was approximately 15 pages. Now those 15 pages are poignant, and they are in the briefing. And those 15 pages, again, identifies her home in Meansville, Ohio, her tax returns in Ohio, and this property in East Point, Michigan as, and I quote, rental property. It was not her home. It was not where she was dwelling. She was using it for business purposes. As a result, we did file a motion for summary judgment, and Judge Drain did grant on the business purposes language only. We've had discussion here today on the term occasionally. Judge Daughtry, you are absolutely correct. We are to use its everyday meaning. And in fact, the Michigan Supreme Court said as much. We're not supposed to constrain it. We're not supposed to provide some sort of technical meaning. We're supposed to prescribe, or prescribe, excuse me, what we all think occasionally means. The exception to business purposes is if you are renting it occasionally for use as a residence. I do not believe under any remote circumstances that two and a half years of unexclusive, unfettered, uninterrupted use of this home by Mrs. Floyd is occasionally. Let me ask you a question, just sort of out of curiosity. In order to have this house covered at the time the fire occurred, what should Ms. Kelly have done? I mean, what would be the difference in securing coverage? Frankly, she should have procured landlord insurance. Okay. I've never been a landlord, which is why I was asking. And that's the reality. It's not necessarily under the record. But the fact of the matter is there are different risks associated with being a landlord than a homeowner. If you're in your home, you're protecting your home. You're maybe not falling asleep while you're cooking grease on a stove. There is a difference. And by the way, there's a difference in the premium. It's much more expensive. Well, that's sort of what I was asking about. And if you did have landlord's insurance on something you were renting, you would expect that the tenant would have rental insurance on the contents. And it's typically part of the contract. I took Ms. Floyd's deposition, and she did not have renter's insurance that covered herself. Or in this case, I propose Ms. Kelly as the landlord. All right. Thank you. You're welcome. And the fact of the matter, that speaks to why the policy is written. We, as an insurance company, recognize that an insured may vacate their private residence and do so on a temporal basis, as we want. On an occasion or an occasionally basis. That's not what we're talking about in this circumstance. That's not this instance. This isn't a snowbird that comes back every spring. This isn't somebody who's sick, as Ms. McGrath was in the McGrath v. Allstate matter. This is somebody who vacated the premises, took her contents, took her family, and received remuneration. Maybe not profitable remuneration, but that's not the requirement. To live and dwell elsewhere. And that's the circumstance at issue. I do also want to address the alternative reason my client's entitled to summary judgment. Which, frankly, we're already talking about. The same facts and circumstances that make this a business purpose also makes the fact that she was not using that dwelling as a private residence by herself. That is the first and foremost requirement when we are talking about residence premises. And it also talks about why this isn't a landlord policy or a landlord coverage situation. Those same facts and circumstances that talk about Mrs. Kelly living, residing, paying taxes in Ohio, while not having food, contents, home, and receiving rental remuneration, is the fact that she was not using this dwelling as a private residence. We outline in our briefing, both below and before this court, why that language is important. I propose it's clear, it's unambiguous. She was not using that dwelling as a private residence by herself. Who was using it as a private residence? Ms. Floyd was. Now, that language has not been specifically developed by the Michigan Supreme Court, but the Michigan Supreme Court did in Hennesser tell us we consider what was going on at the time of loss. What was going on at the time of loss? Beatrice Kelly was residing, dwelling, using a private residence in Maynesville, Ohio. She wasn't doing it at the insured address. This court is charged to apply Michigan law. Michigan law tells us, whether it's in Hennesser, whether it's in McGrath, it says if you live elsewhere for two years because of illness, that is not using, that is not residing. I cited to the Banks case, and in that case, Mr. Banks, with the same exact policy language we're talking about here, spent 95 percent of his time away from the insured address for the two years before this incident. The Michigan Court of Appeals said that's not residing, that's not living. And more importantly, it defined private residence. What is a private residence? It's a home where people actually live. Beatrice Kelly was not actually living at the Springer address at the time of the loss, at the time the policy was issued a mere 10 weeks earlier, and not for the two years before that. This was not a private residence that she was using. Your Honors, Judge Green was correct when it granted Metropolitan's motion on the basis of business purpose. He would have been equally correct to find that this was not a dwelling being used by her as a private residence. I would ask this court to affirm that decision and grant summary judgment to Metropolitan. If you don't have any other questions, I will close my argument. Thank you. Thank you. A few brief follow-up points. As to the definition of occasionally issue, as I pointed out in the briefs and discussed a little bit previously, there are these three cases out there that I think provide the best guidance as to determining what occasionally means in this circumstance. And I would note that in one of those cases, as we talked about, two years it was being rented out. And in the second case, there was a one-year lease that was entered into. In the third case, the one with the extra residence space in a farmhouse, there had been numerous tenants, but there was time broken up in between them. One aspect I'd like to emphasize in this discussion about economic gain, while that's important, presumably in the one case where it was leased for two years, there was an economic gain. In those cases, I don't see anything in those discussions saying that it was for a minimal amount. And same thing with the one-year lease, where the recently widowed woman was going to Florida and trying to figure out what she was going to do. So I think the economic gain argument is a bit of an outlier. Another thing that's important, defendant does not point to any case law that supports its arguments on occasional. I've pointed to three different cases, I think, which provide good guidance on this. As to the residence premises issue, the Durham case, which I cited, is really the primary and most, the latest Michigan law on this subject. And part of what this Court needs to do is figure out what the relevant Michigan law is on this. It is an unpublished case, but it's the only law interpreting this specific language. And it's important, the distinction is important as to the language. The cases say that you have to look at this exact policy language. In Hennesser and McGrath, the language is where you reside, as opposed to Durham and here, where the language is used as a private residence. That's a big difference. Durham noted that difference and said in that situation where someone had moved, husband and wife moved to Atlanta, left behind a house that had nothing in it, no tenants. This situation, there was someone there. And I do want to real quickly touch on the reference to Banks. Counsel mentions that and says it's really the same language. I disagree with that. If you look at the language in the opinion, the opinion in Banks mentions that. And that's page, the bait stamp or the page 284 in the defendant's brief. Importantly, that has a provision that says the presence has to be a dwelling building, but also it's the portion of any other building you occupy as a residence. That specifically had you occupy. So that distinguishes it from that. Durham is most applicable. I see my time is up unless you have any other questions.